United States District Court
Southern District of Texas
**ENTERED**
September 19, 2024
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | |
|---|---|
| PAMELA H. ALFORD, | § |
| | § |
| Plaintiff. | § |
| | § |
| V. | § CIVIL ACTION NO. 3:23-cv-00152 |
| | § |
| COMMISSIONER OF SOCIAL | § |
| SECURITY, | § |
| | § |
| Defendant. | § |

### OPINION AND ORDER

Plaintiff Pamela Alford ("Alford") seeks judicial review of an administrative decision denying her application for disability insurance benefits under Title II of the Social Security Act (the "Act"). *See* Dkt. 1 Alford and Defendant Martin O'Malley, the Commissioner of the Social Security Administration (the "Commissioner"),[1] have both filed briefs. *See* Dkts. 13, 14. After reviewing the briefing, the record, and the applicable law, I affirm the Commissioner's decision.

### BACKGROUND

On September 22, 2020, Alford filed an application for Title II disability insurance benefits alleging disability beginning on May 1, 2020. Her application was denied and denied again upon reconsideration. Subsequently, an Administrative Law Judge ("ALJ") held a hearing and found that Alford was not disabled. Alford filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. O'Malley is "automatically substituted" as the defendant in this suit. FED. R. CIV. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to (1) "whether the Commissioner applied the proper legal standards," and (2) whether the Commissioner's factual findings are supported by substantial evidence. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in *any* substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (cleaned up). The ALJ uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See Salmond*, 892 F.3d at 817. Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id.*

## THE ALJ'S DECISION

The ALJ found at Step 1 that Alford "has not engaged in substantial gainful activity since May 1, 2020, the alleged onset date." Dkt. 9-3 at 21.

The ALJ found at Step 2 that Alford suffers from "the following severe impairments: diabetes mellitus, psoriatic arthritis, cirrhosis, hepatic encephalopathy, gastroparesis syndrome, morbid obesity, disorders of the lumbar spine, and obstructive sleep apnea." *Id.* The ALJ found that Alford's "medically determinable mental impairments of anxiety and depression, considered singly and in combination, do not cause more than minimal limitation in [Alford]'s ability to perform basic mental work activities and are therefore non-severe." *Id.* at 22.

At Step 3, the ALJ found that none of these impairments meets or medically equals any of the Social Security Administration's listed impairments.

Prior to consideration of Step 4, the ALJ determined Alford's RFC as follows:

> [Alford] has the residual functional capacity to perform work at the light exertional level with the following non-exertional limitations: [Alford] can occasionally climb ramps and stairs, but can never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel and crouch, but can never crawl; can never work at unprotected heights or around moving mechanical parts; can never operate heavy equipment or drive a motor vehicle for commercial purposes; and must avoid all exposure to open flames and open bodies of water.

*Id.* at 26.

At Step 4, the ALJ found that Alford "is capable of performing past relevant work as a budget accountant" because "[t]his work does not require the

performance of work-related activities precluded by [Alford]'s residual functional capacity." *Id.* at 28. Accordingly, the ALJ determined that Alford is not disabled.

## DISCUSSION

This social security appeal raises one issue: whether the ALJ erred by failing to account for the total limiting effects of Alford's severe and non-severe impairments. I answer that question in the negative.

## A.   ANY ERROR BY THE ALJ AT STEP 2 WAS HARMLESS

Alford first takes issue with "the ALJ's patently unreasonable finding that her anxiety and depression were non[-]severe impairments." Dkt. 13 at 17. This argument is without merit because the ALJ proceeded past Step 2, so any error was harmless. *See Jones v. Astrue*, 821 F. Supp. 2d 842, 850 (N.D. Tex. 2011) (failure to find an impairment severe at Step 2 "is not reversible [error] if the ALJ proceeded beyond the second step of the five-step sequential analysis in analyzing the claimant's impairments, thereby allowing the district court to infer that the ALJ did find the impairment severe"). Here, the ALJ recounted Alford's psychological complaints and evaluated the persuasiveness of the state agency psychological consultant and the psychological consultative examiner. Thus, even if the ALJ erred in finding Alford's anxiety and depression non-severe, the error was harmless because the ALJ evaluated Alford's psychological complaints and the medical opinions related to those complains in crafting Alford's RFC.

## B.   THE ALJ'S DECISION IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Alford next contends that the ALJ failed to properly evaluate the opinion of the psychological consultative examiner, Richard Hardaway, Ph.D. ("Dr. Hardaway"). Dr. Hardaway opined that Alford "was unlikely to have the ability to sustain concentration and persist in work-related activity at a reasonable pace; unlikely to maintain effective social interaction on a consistent basis and independent basis with supervisors, coworkers, and the public; or cope with normal pressures in a competitive work setting." Dkt. 9-3 at 28 (citing Dkt. 9-8 at 434–440). The ALJ found this opinion unpersuasive because "it is based solely on

[Alford]'s subjective statements and presentation and no objective medical evidence. No explanation for the opinion is provided despite the normal mental status exam findings upon evaluation. Although [Alford] does complain of anxiety, the mental status exams throughout the record have been within normal limits." *Id.*

Alford contends that "anxiety and depression are entirely subjective impairments," and therefore, the ALJ was wrong to reject Alford's complaints based on a lack of objective medical evidence. Dkt. 13 at 19 (citing *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 361 (4th Cir. 2023)). Alford is correct that a lack of objective medical evidence, standing alone, is not a sufficient reason to reject a claimant's subjective complaints. But here, it was not just the lack of objective medical evidence that informed the ALJ's decision. The ALJ also found it significant that Alford was "let go due to the economy," not because of an impairment that affected her ability to work. Dkt. 9-3 at 27 (quotation omitted). Moreover, the ALJ found that Alford "is able to take care of personal needs, prepare meals, perform some household chores, drive a motor vehicle, shop in stores, watch television, and participate in craft activities with others." *Id.*

Alford next argues that "the ALJ's thinly reasoned analysis was simply incorrect," and that even the three pages of medical record cited by the ALJ "establish the exact opposite." Dkt. 13 at 19. A closer look at these three records reveals otherwise.

First, Alford claims that her September 21, 2020 visit with a psychiatric mental health nurse practitioner ("PMHNP") supports a finding of severe mental impairment because Alford reported "[i]rritable mood and feeling like the 'wall[s] are closing in,'" after which the provider prescribed an anti-depressant. *Id.* (quoting Dkt. 9-8 at 464). Yet, that same record also states that Alford had "no suicidal attempts or thoughts, no history of mania/fluctuation in mood, no delusional thoughts"—"just anxious and mild irritability." Dkt. 9-8 at 463. During that visit, Alford denied having any pain or chronic condition, including joint

stiffness. *See id.* at 464. She denied pain and joint stiffness despite having visited a rheumatologist for "progressively worsening pain and stiffness in her hands and feet" only three months prior. Dkt. 13 at 15. The provider said that Alford's "[j]udgment for social situations and everyday activities [was] within normal limits" and that Alford was "[a]lert and oriented to person, place, time and situation." Dkt. 9-8 at 464.

Next, Alford claims that an April 20, 2022 visit with the same PMHNP supports a finding of severe mental impairment because Alford reported that she was not sleeping well, was anxious due to memory issues and medical problems, and was struggling with misophonia (sound sensitivity). *See* Dkt. 13 at 19 (citing Dkt. 9-8 at 511–13). Yet, that same record also states that Alford had "[n]o abnormal thought content, no auditory or visual hallucinations, no paranoid ideations or delusions." Dkt. 9-8 at 511.  Alford denied suicidal ideations and was reported to be alert, articulate, fluent, goal directed, logical, organized, and focused. *See id.* The provider reported that Alford's recent and remote memory were intact and her judgment was not impaired—Alford had good insight. *See id.* Moreover, Alford again denied having any pain or chronic condition, including joint stiffness. *Id.*

Finally, Alford claims that a May 19, 2022 visit with her endocrinologist supports a finding of severe mental impairment because Alford reported missing some doses of insulin because she was having trouble remembering. *See* Dkt. 9-8 at 531. Yet, that same record also states that Alford had "good eye contact, judgment and insight," and that she was "well groomed, pleasant and cooperative." *Id.* at 532. That record also shows Alford again denying painful joints or weakness. *See id.* at 533.

Alford also complains that the ALJ "failed to mention the extent to which she could perform [daily] activities," and this "superficial description of her daily activities failed to accurately portray her abilities" such that "no logical bridge exists between the evidence and the ALJ's finding." Dkt. 13 at 22–23. Specifically,

Alford points to her testimony that "when doing laundry, she cannot get the clothes out of the washer to put them in the dryer"; "[s]he can only do simple household chores in brief 10 to 15-minute spurts"; "[s]he cannot vacuum or mop largely due to lumbar pain"; "[s]he must make sure someone is home in case she needs help getting out of the bath"; "[s]he must break her activities up into small time periods"; "[s]he grocery shops and/or shops in stores about once a week for about an hour with use of a buggy to lean on"; "[s]he cannot eat with her family because she is too sensitive to the sound of eating"; and "TV and the telephone hurt her ears." *Id.* at 22 (quotations omitted). All that may be true, but substantial evidence still supports the ALJ's decision.

The record shows that Alford consistently denied having joint pain or weakness to multiple providers over several years. As the ALJ noted, "[t]he burden is on [Alford] to show her medical impairments are so limiting to warrant a finding of disability." Dkt. 9-3 at 27. The ALJ found that Alford had not carried that burden, and substantial evidence supports that decision.

I agree with Alford that her complaints support her self-described limitations. But the record *also* supports the ALJ's decision. I can only look at the record and ask if there is a "conspicuous absence of credible choices." *Ramirez*, 606 F. App'x at 777. Here, the ALJ considered Alford's alleged limitations, but found them inconsistent with Alford's other statements and the medical evidence. The ALJ was within her authority to view the evidence differently than Alford would prefer when the record showed that Alford's mental status was consistently within normal limits, and Alford repeatedly denied joint stiffness or pain to her various providers. "Conflicts in the evidence are for the Commissioner to resolve." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). I will not reweigh the evidence. Accordingly, I find that the RFC is supported by substantial evidence. *See Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) ("We will not re-weigh the evidence nor, in the event of evidentiary conflict or uncertainty, will we substitute our

judgment for the Commissioner's, even if we believe the evidence weighs against the Commissioner's decision." (cleaned up)).

## CONCLUSION

For the reasons discussed above, the Commissioner's decision is affirmed.

SIGNED this 19th day of September 2024.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE